UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                                      **REPORT AND**
                                                      **RECOMMENDATION**
                                                      08-cr-6020

v.

Kelvin Mitchell,

        Defendant.

### Preliminary Statement

The defendant Kelvin Mitchell is charged in a single count indictment with conspiracy to possess with the intent to distribute and to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A). Currently before the Court is a motion by Mitchell to suppress evidence seized pursuant to eavesdropping warrants and search warrants. (Docket # 94).[1] The government filed papers in opposition to the motion (Docket # 113). On September 16, 2009, a hearing was held and arguments were heard from both parties. The Court reserved its decision on defendant's suppression motion. The following is my Report and Recommendation as to the defendant's suppression motion.

---

[1] By Order of Judge David G. Larimer, dated February 5, 2008, all pretrial motions have been referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(A)-(B). (Docket # 16).

**Factual Background**

1. <u>The Eavesdropping Warrants:</u> Beginning in May 2007, state and federal government agencies, including the Rochester Police Department ("RPD"), the Bureau of Alcohol, Tobacco and Firearms ("ATF"), and the Drug Enforcement Administration ("DEA"), began an investigation into the drug trafficking activities of a local drug dealer, June Thousands, in Rochester, New York. Through the course of their investigation, the government investigators learned that Thousands was part of a larger organization that she referred to as the "family." The government agents hoped to infiltrate the organization and determine the extent of the trafficking activity and to identify its participants.

On November 19, 2007, law enforcement applied for an eavesdropping warrant and received authorization to begin eavesdropping on Thousand's cellular telephone, (585) 690-8405. This eavesdropping warrant remained active until February 12, 2008, pursuant to various extension Orders issued by Monroe County Court Judge Elma Bellini. In November 2007, through several intercepted calls, the government agents learned that Thousands had multiple suppliers, including an individual named Peter Holmes. On November 30, 2007, government agents applied for and received authorization to intercept calls on Peter Holmes's cell phones, (585) 285-9012 and (585) 698-7302. Based on calls intercepted on Holmes's phones, investigators learned that Holmes was being supplied by an individual

2

named Shonn "Big S" Jackson, who the government alleges is a well known drug trafficker in the City of Rochester. Jackson has multiple prior drug trafficking convictions.

On December 10, 2007, law enforcement applied for an eavesdropping warrant and received authorization to begin eavesdropping on Jackson's cellular telephone, (585) 489-6658. Law enforcement learned that Shonn Jackson was receiving his cocaine supply from several individuals, including the defendant Mitchell who was residing in Greensboro, North Carolina. Through intercepting Jackson's telephone calls, investigators surmised that Mitchell may be responsible for delivering substantial quantities of cocaine to Jackson and his associates from California for distribution in Rochester, New York. As a result, law enforcement applied for an eavesdropping warrant for defendant Mitchell's cellular telephone. On December 27, 2007, Judge Bellini issued an eavesdropping warrant for Mitchell's cellular telephone, (585) 659-1038; on January 8, 2008, Judge Bellini issued an eavesdropping warrant for a second cellular telephone utilized by Mitchell, (585) 773-6874; and on January 25, 2008, Judge Bellini issued another eavesdropping warrant for a third cellular telephone utilized by Mitchell, (323) 228-5384. Mitchell now moves to suppress evidence derived from the above referenced eavesdropping warrants.

2. <u>The Search Warrant of 25 Ravine Avenue:</u> Mitchell also moves to suppress evidence seized and derived from the execution of a

3

search warrant at 25 Ravine Avenue, Apartment 205, Rochester, New York. Evidence seized as a result of the search includes a digital scale, cocaine residue, empty bags and a shrink wrap machine. Mitchell contends that he maintained a reasonable expectation of privacy at 25 Ravine Avenue Apartment 205, as he "exercised dominion and control over the apartment." See Affirmation of Mark D. Hosken, Esq. (hereinafter Hosken Aff.) (Docket # 94) at ¶ 23.

In opposing the defendant's motion, the government argues that "[t]here has been no affidavit or other affirmation submitted by the defendant himself indicating the basis of his expectation of privacy in 25 Ravine Avenue." See Government's Response to Defendant's Pre-Trial Motions (Docket # 113) at p. 26. Accordingly, the government argues that defendant lacks standing to contest the search. Although plaintiff originally indicated that he would submit an affidavit in support of his motion "as soon as practically possible" (see Hosken Aff. at ¶ 23 n.3), to date defendant has not submitted any factual evidence or affidavit to demonstrate he had an expectation of privacy in the Ravine Avenue premises.

3.  <u>The Search of 2103 Beech Grove Drive:</u> Finally, Mitchell moves to suppress evidence seized and derived from the execution of a search warrant at 2103 Beech Grove Drive[2], Greensboro, North

---

[2] The government concedes that 2103 Beech Grove Drive is the defendant's residence and does not contest defendant's standing to challenge this search.

4

Carolina. On January 26, 2008, Magistrate Judge P. Trevor Sharp, sitting in the Middle District of North Carolina, issued a search warrant for 2103 Beech Grove Drive. Evidence seized as a result of the resulting search includes three firearms, ammunition, photographs, mail, documents, cellular telephones and computers. In support of its application for the search warrant, the government submitted a 21-page affidavit of ATF Special Agent M. Dixon Robin. In his affidavit, Agent Robin described his involvement in the investigation of defendant Mitchell and other individuals involved in a narcotics and trafficking organization operating between Los Angeles, California, Rochester, New York and Greensboro, North Carolina. See Affidavit of M. Dixon Robin annexed as Exhibit "E" to Docket # 94 at ¶ 6. Agent Robin indicated that the investigation "revealed substantial and reliable evidence that KELVIN MITCHELL is one of the leaders of a drug trafficking organization dealing large quantities of cocaine throughout the above cities" and defendant Mitchell "has for the past year been responsible for supplying various individuals in Rochester, New York with kilogram quantity amounts of cocaine." Id.

## Discussion

1. The Eavesdropping Warrants: Pursuant to 18 U.S.C. § 2518(10)(a), defendant Mitchell moves to suppress evidence obtained through the various court-issued Title III intercept orders.

5

Specifically, Mitchell seeks to suppress all communications that were obtained by eavesdropping on the following telephone lines utilized by Shonn Jackson and Kelvin Mitchell:

- (585) 489-6658 – Jackson's phone;
- (585) 659-1038 – Mitchell's phone;
- (585) 490-6896 – Jackson's phone;
- (585) 773-6874 – Mitchell's phone;
- (323) 228-5384 – Mitchell's phone.

Mitchell argues that the eavesdropping warrants should not have been authorized because the affidavits submitted in support of the warrants contained insufficient information to demonstrate that traditional investigative procedures had been exhausted or otherwise adequately considered. Specifically, Mitchell claims that (i) confidential informants were used during the investigation and "this technique was successful"; (ii) ordinary surveillance methods were "helpful in identifying several locations and vehicles used by members of this [narcotics] organization"; (iii) undercover officers could have assisted in achieving the goals of the investigation; (iv) toll records were not obtained or reviewed; (v) search warrants were rejected; and, (vi) a grand jury investigation was improperly rejected as impractical. See Hosken Aff. at ¶ 17.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 allows for wiretaps in limited circumstances. See 18 U.S.C. § 2510 et seq. Under § 2518, in order to lawfully conduct wiretap surveillance, the government's application must set forth "a full and

6

complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." See 18 U.S.C. § 2518(1)(c). The purpose of this requirement "is to strike a balance between citizens' privacy rights and the needs of law enforcement by ensuring that wiretapping is not used when traditional investigative techniques would suffice." United States v. Vasconcellos, Cr. No. 1:07-CR-226, 2009 WL 3152468, at *20 (N.D.N.Y. Sept. 29, 2009)(mem.).

In United States v. Concepcion, 579 F.3d 214 (2009), a case decided after the defendant filed his omnibus motions, the Second Circuit reviewed the standard courts should utilize in determining whether the government has met the exhaustion requirement. While emphasizing that generalized and conclusory statements are insufficient, the court also held that "the Government is not required to exhaust all conceivable investigative techniques before resorting to electronic surveillance." Id. at 218. The court stated courts deciding whether to issue wiretaps should apply a "commonsense approach" especially in "complex and sprawling criminal cases involving large conspiracies." Id.

Applying a commonsense approach to the wiretaps at issue here yields a conclusion that the motion to suppress should be denied. Mitchell complains that investigative techniques less intrusive than electronic eavesdropping could have been successfully used by law

7

enforcement and that the exhaustion requirement "demands a showing" that these alternative techniques "are not available before the Court permits an invasion of one's privacy." See Hosken Aff. at ¶ 18. However, "[n]either the New York nor the federal statute requires that any particular investigative procedures be exhausted before a wiretap may be authorized. Wiretaps are neither a routine initial step nor an absolute last resort." United States. v. Lilla, 699 F.2d 99, 104 (2d Cir. 1983) (citation and quotations omitted). See United States v. Terry, 702 F.2d 299, 310 (2d Cir. 1983)("An affidavit describing the standard techniques that have been tried and facts demonstrating why they are no longer effective is sufficient to support an eavesdropping order even if every other possible means of investigation has not been exhausted."); United States v. Funderburk, 492 F. Supp. 2d 223, 242 (W.D.N.Y. 2007)("The purpose of this requirement is not to render electronic surveillance an investigative tool of last resort, but to apprise the judicial officer of the progress of the investigation and the difficulties inherent in the use of normal investigative techniques.").

The affidavits submitted by law enforcement in support of the wiretap applications at issue here were adequate. They described an investigation that began in the Spring of 2007 with undercover drug purchases from June Thousand. Although Ms. Thousand boasted of her sources of supply of the narcotics, she was guarded in introducing or disclosing to undercover agents who those sources

8

were. Monroe County Court Judge Elma Bellini granted the first wiretap on Thousand's phone on November 19, 2007, and the fruits of that wiretap led law enforcement to evidence supporting a drug distribution network involving multiple sources of supply across state lines. There were several subsequent wiretap applications sought from and approved by Judge Bellini, each application building on the results of the preceding wiretap application. I have reviewed the affidavits submitted by law enforcement in support of the wiretaps. In each, the affiant discussed the utility and use of normal investigative techniques, including the use of confidential informants or undercover officers, physical surveillance, search warrants, toll records and pen registers. The affidavits asserted that these methods only provided a limited picture of the drug distribution network, and noted that their investigation has shown that the members of the conspiracy regularly use the telephone to further the goals of their drug trafficking activities. "[W]iretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation". United States v. Steinberg, 525 F.2d 1126, 1130 (2d Cir. 1975), cert. denied, 425 U.S. 971 (1976).

In sum, viewing the affidavits submitted in support of the wiretap applications in a commonsense fashion reveals a large scale narcotics trafficking operation which could not be adequately investigated by traditional methods. Giving appropriate deference

9

to Judge Bellini's review and acceptance of the affidavits in support of the application for the warrants, I conclude that Judge Bellini properly found that the applications adequately addressed the exhaustion requirement found in § 2518. Accordingly, it is my Report and Recommendation that defendant's motion to suppress the evidence obtained through the various court-issued Title III intercept orders be denied.

2. The Ravine Avenue Search Warrant: "[T]he burden of establishing standing falls squarely upon the defendant." United States v. Hemingway, No. 05-CR-6108, 2007 WL 499470, at *9 (W.D.N.Y. Feb. 13, 2007)(citing Rawlings v. Kentucky, 448 U.S. 98, 104 (1980)). "This burden is met only by sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge." Hemingway, 2007 WL 499470, at *9. Because defendant Mitchell has not submitted an affidavit from anyone with personal knowledge to establish standing, it is my Report and Recommendation that his motion to suppress evidence seized and derived from the execution of a search warrant at 25 Ravine Avenue should be denied.

3. The North Carolina Search Warrant: Probable cause to search a dwelling "exists if the issuing judge finds a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Ponce, 947 F.2d 646, 650 (2d Cir. 1991)(quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

It is well settled that courts conducting a review of a judge's decision to issue a warrant must pay "great deference" to the issuing judge's determination of probable cause. United States v. Smith, 9 F.3d 1007, 1012 (2d Cir. 1993).

I find that the search warrant was supported by probable cause to search Mitchell's residence at 2103 Beech Grove Drive in Greensboro, North Carolina. Mitchell's primary complaint is that although the information submitted to Judge Sharp may support an inference that he was involved in criminal activity, "there is little evidence to support probable cause to believe that the items sought are located in the residence." See Hosken Aff. at ¶ 33. I disagree with defendant's argument. Agent Robin's affidavit contained sufficient information for Magistrate Judge Sharp to rely on in determining that evidence of drug trafficking could be found inside Mitchell's 2103 Beech Grove Drive residence. The totality of circumstances presented to Judge Sharp supported a finding that defendant Mitchell was involved in narcotics trafficking and that evidence of such trafficking could be located in his 2103 Beach Grove Drive residence. See United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985)("drug traffickers frequently maintain at their homes large amounts of cash, drugs, books, ledgers and other documents evidencing their criminal activities").

Even assuming for the sake of argument that the warrant application was not supported by probable cause, evidence seized

pursuant to a warrant which is deficient is nevertheless admissible if the executing officers relied on the warrant in "objective good faith." United States v. Leon, 468 U.S. 897, 923 (1984). See United States v. Miles, No. 05-CR-59A, 2006 WL 2403464, at *5 (W.D.N.Y. Aug. 18, 2006)(suppression of evidence obtained pursuant to a search warrant is an appropriate remedy only if law enforcement's reliance upon the search warrant was objectively unreasonable, i.e., the officer lacked objective good faith in the validity of the warrant). Here, there simply is no basis for this Court to find anything other than that the searching officers had an objective good faith basis to rely on the search warrant issued by Judge Sharp. Accordingly, it is my Report and Recommendation that Mitchell's motion to suppress the evidence seized as a result of the search of his North Carolina residence should be denied.

## Conclusion

For the foregoing reasons, it is my Report and Recommendation that defendant's motion to suppress evidence seized pursuant to eavesdropping warrants and search warrants (Docket # 94) be **denied**. **SO ORDERED.**

---
JONATHAN W. FELDMAN
UNITED STATES MAGISTRATE JUDGE

Dated: November 25, 2009
Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).[3]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Government and the Defendant.
**SO ORDERED.**

/s/ Jonathan W. Feldman
Jonathan W. Feldman
United States Magistrate Judge

Dated: November 25, 2009
Rochester, New York

---

[3] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(f) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. United States v. Andress, 943 F.2d 622 (6th Cir. 1991); United States v. Long, 900 F.2d 1270 (8th Cir. 1990).